IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| V. | ) CR. No.: 2:08-CR-3-WKW |
| | ) |
| JAMAAR TAYLOR | ) |

**DEFENDANT'S MOTION TO SUPPRESS
AND CITATIONS OF AUTHORITY**

Defendant Jamaar Taylor, by and though undersigned counsel and pursuant to Rule 12 of the Federal Rules of Criminal Procedure and the Fourth, Fifth and Sixth Amendments to the U.S. Constitution, respectfully moves this Court to suppress all items obtained as a direct or indirect result of his illegal seizure in this matter, including all physical evidence and statements by Mr. Taylor.

This evidence includes but is not limited to: (a) any and all physical evidence seized on July 29, 2007, (b) any and all statements made as a result of the illegal stop, search and seizure of the vehicle, and (c) any other "fruit" of the illegal stop, search and seizure.

**Facts**

At a hearing on this motion, on information and belief, the evidence and legal arguments presented will show:

1. According to Deputy Charlie McKinnon's report, Mr. Taylor was stopped and detained at the intersection of Golson Road on Hwy 185 in Fort Deposit on July 29, 2007. According to the statement of Officer Antonio Grandison, Mr. Taylor was stopped

because of a DUI/Safety Checkpoint. Fort Deposit Officers Joshua Williams and Antonio Grandison, with the assistance of Lowndes County Deputy Charlie McKinnon, were involved in the stop.

2. During the stop, as Officer Williams and Officer Grandison requested Mr. Taylor's driver's license, Deputy McKinnon questioned Mr. Taylor and his passenger, Joshua Simmons as to whether anyone had smoked marijuana in the vehicle recently. Deputy McKinnon questioned Mr. Taylor about marijuana because, according to the reports, either Deputy McKinnon or Officer Williams allegedly smelled a strong odor coming from Mr. Taylor's vehicle.

3. Officer Williams ordered Mr. Simmons out of the vehicle and as Mr. Simmons complied, a small handgun fell to the ground. All the officers drew their weapons and Mr. Simmons was handcuffed.

4. Deputy McKinnon turned to Mr. Taylor and asked if Mr. Taylor had any weapons, to which Mr. Taylor responded in the affirmative.

5. As a result of the improper stop and seizure of Mr. Taylor, a small handgun was allegedly found on Mr. Taylor. An additional search of Mr. Taylor was conducted and allegedly Deputy McKinnon seized a plastic bag containing several bags of a green leafy substance from Mr. Taylor's right front pocket.

6. As a result of the improper stop and seizure of Mr. Taylor, Mr. Taylor was arrested and gave a brief, written statement after waiving his Miranda rights by signing a waiver form.

7. On information and belief, there are no reports, or any paperwork of any

kind, recording the information required for any legal "checkpoint." In fact, the only paperwork turned in to either the Fort Deposit Police Department or the Lowndes County Sheriff's Office pertaining to the "checkpoint" is the Incident/Offense Report prepared by Deputy McKinnon and the statement of Officer Grandison relating to Mr. Taylor's stop, detention and seizure.

8. On information and belief, no circumstances were present under which this roadblock or the resulting traffic stop met the requirements of the Fourth Amendment.

9. On information and belief, no procedures had been developed or were in use for this traffic stop, to insure that this traffic stop met the requirements of the Fourth Amendment.

10. On information and belief, there was no warnings given that Mr. Taylor was approaching a "checkpoint" or "random check."

11. The officers had unbridled discretion as to the manner and the determination of who would be stopped for the "checkpoint."

12. There was no written procedure or system in place to control the actions of the officers conducting the "checkpoint."

13. On information and belief, none of the officers conducting the "checkpoint" had a reasonable and articulable suspicion to believe Mr. Taylor was in violation of any federal, state or local laws or ordinances when Mr. Taylor's was stopped. Nor did any officer have probable cause to believe Mr. Taylor was involved in any illegal activity.

14. The stop of Mr. Taylor's vehicle was in violation of the Constitution and the items seized as a result of the subsequent search, and any statements made during the

illegal stop, must be suppressed.

### Issues Presented

1. The "checkpoint," as it was conducted, was in violation of the Fourth Amendment.

2. The stop, and warrantless search and seizure, of Mr. Taylor were unjustified by any circumstances and were in violation of the Fourth Amendment.

3. The oral and written statements of Mr. Taylor are the fruits of the illegal stop and detention.

### Argument

The foregoing circumstances violated Mr. Taylor's Fourth, Fifth, and Sixth Amendment rights, in that:

1. While there are various tests for determining when an individual has been seized, see *United States v. Puglisi*, 723 F.2d 779, 783 (11th Cir. 1984); *United States v. DeLaRosa*, 922 F.2d 675, 678 (11th Cir. 1991), a vehicle stop at a police checkpoint is a seizure within the meaning of the Fourth Amendment. *City of Indianapolis v. Edmond*, 531 U.S. 32, 40 (2000); *Terry v. Ohio*, 392 U.S. 1 (1968). Thus, Mr. Taylor was seized and the Fourth Amendment governs review of that seizure.

2. Seizure without individualized suspicion of wrongdoing violates the Fourth Amendment. *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000); See also *United States v. Lester*, 148 F.Supp. 2d 597 (D.Md.2001) (a U-turn prior to a security roadblock does not, without more, provide reasonable suspicion sufficient for a stop).

3. A random or selective stop at the officer's discretion violates the Fourth Amendment. *City of Indianapolis v. Edmonds, 531 U.S. 32; Delaware v. Prouse*, 440 U.S. 648, 663 (1979) (except where reasonable and articulable suspicion exists of law

violation, stop and detention of motorist for drivers license check violates the Fourth Amendment). "...[S]tandardless and unconstrained discretion is the evil the Court has discerned when in previous cases it has insisted that the discretion of the official in the field be circumscribed...." *Delaware v. Prouse*, 440 U.S. 648, 661.

    4.    The legality of a seizure pursuant to a general checkpoint requires inquiry into the purpose of the checkpoint. *City of Indianapolis v. Edmond,* 531 U.S. 32, 46 (2000). In *Michigan Department of State Police v. Sitz,* 496 U.S. 444 (1990), the Supreme Court stated a three-part "balancing test" for determining whether a road checkpoint meets the criteria for an exception to the Fourth Amendment requirement that any detention be based on reasonable, articulable and individualized suspicion, and held that a court considering the legality of a checkpoint must balance: "(1) the importance of the public concerns served by the checkpoint; (2) the effectiveness of the checkpoint in advancing the public interest; and (3) the extent of the intrusion of the checkpoint on law-abiding motorists." *Shankle v. Texas City,* 895 F. Supp. 996, 1004-1005 (S.D. Tex. 1995).

    5.    Courts reviewing the reasonableness of checkpoints also consider factors such as:

> (1) the neutral criterion implicit in a systematic procedure (*Hall v. Commonwealth*, 12 Va.App. 972, 406 S.E.2d 674 (1991)(roadblock was constitutionally flawed where individual officers had broad discretion)); (2) warning signs or flares (*State v. Riley*, 377 N.W.2d 242 (Iowa Ct.App. 1985) (roadblock constitutional where adequate advance warning signs, illuminated at night timely informed approaching motorists)); (3) the safety of the location (*Commonwealth v. McGeoghegan*, 389 Mass. 137, 449 N.E.2d 349 (1983) (roadblock poorly illuminated and unsafe for motorists)); (4)

the productivity of the roadblock (*State v. Koppel*, 127 N.H.286, 499 A.2d 977 (1985) (roadblock exceeded constitutional limitations where only 18 drivers arrested out of 1680 vehicles stopped)); (5) standardized procedures for the operation of the roadblock (*State v. Larson*, 485 N.W.2d 571 (Minn.Ct.App. 1992) (finding license checkpoint unconstitutional when implemented with no specific written instructions to control discretion of field officers)); and (6) whether the roadblock was a pretext to uncover evidence of more serious criminal activity (*United States v. Morales-Zamora*, 974 F.2d 149 (10th Cir. 1992) (finding police roadblock unconstitutional where drug-sniffing dog was used to examine cars while officers checked drivers' licenses)).

*Park v. Forest Service of U.S.*, 69 F. Supp. 2d 1173 (W.D. Mo. 1999); rev'd on other grounds, 205 F.3d 1034 (8th Cir. 2000) (reversal was based on plaintiffs' lack of standing to seek injunctive relief because they had been subjected to the unconstitutional checkpoints on only one occasion in the past, 205 F.3d at 1037; appellate court concurred the stop was unconstitutional, 205 F.3d at 1040).

6.   In the present case, consideration of each of these factors weighs against the legality of the "checkpoint."

7.   The alleged purpose of the stop of Mr. Taylor does not meet the criteria of the Fourth Amendment. *United States v. Munoz*, 701 F.2d 1293 (9th Cir. 1983) (the stop of the defendant's truck by a roving patrol which was stopping all vehicles in a national park to check for woodcutting permits and possible game violations was not based on probable cause or reasonable suspicion that the defendant was engaged in criminal activity and, therefore, violated the Fourth Amendment)

8.   The officer's warrantless seizure of a plastic bag from Mr. Taylor's pocket was in violation of the Fourth Amendment. Even a "protective patdown" does not

authorize manipulation or seizure of items which are clearly not weapons. *Minnesota v. Dickerson*, 508 U.S. 366 (1993).

9.   The evidence and statements obtained from Mr. Taylor were the result of his illegal seizure and thus must be suppressed as "fruits" of that illegality. *Wong Sun v. United States,* 371 U.S. 471 (1963); *United States v. Crosby,* 739 F.2d 1542, 1548 (11th Cir. 1984).

WHEREFORE, based on the foregoing, Mr. Taylor respectfully moves that all information and items obtained as a result and/or as a "fruit" of the improper and illegal procedures and events on July 29, 2007 be suppressed.

                        Respectfully submitted,

                        <u>**s/Aylia McKee**</u>
                        **AL Bar No. 6178**
                        Attorney for Mr. Taylor
                        Federal Defenders
                        Middle District of Alabama
                        201 Monroe Street, Suite 407
                        Montgomery, AL 36104
                        TEL:  (334) 834-2099
                        FAX:  (334) 834-0353

**CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Kent Brunson, Assistant U. S. Attorney.

    Respectfully submitted,

s/Aylia McKee
AL Bar No. 6178
Attorney for Mr. Taylor
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL: (334) 834-2099
FAX: (334) 834-0353